NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BRAD LAFFERTY, *et al.*, <br><br> Plaintiff(s), <br> v. <br><br> THE SHERWIN-WILLIAMS COMPANY, *et al.*, <br><br> Defendant(s). | Civil No. 1:17-06321-RBK/AMD <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter arises from defendant the Sherwin-Williams Company's ("Defendant") Motion to Dismiss (Doc. No. 33) Plaintiffs' Amended Complaint (Doc. No. 32). For the reasons set forth below, Defendant's motion is **GRANTED**, and Plaintiffs' Amended Complaint is hereby **DISMISSED**.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This case stems from Defendant's development, manufacturing, and distribution of paint, varnish, coatings, and related products and the hazardous substances that those activities produced and subsequently released into the surrounding area.

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Accordingly, for purposes of this motion, the Court adopts and accepts as true the facts as pled in the Complaint.

1

Defendant[2] and its predecessor manufactured these products at a plant in Gibbsboro, N.J.—a community of around 2,200 people—from 1851 to 1978. (Am. Compl. at 7; Def. MTD at 1.) Defendant conducted its operations on three distinct areas of land in Gibbsboro. (Am. Compl. at 12–14.) All three (collectively, the "Site") have been designated as Superfund Sites by the United States Environmental Protection Agency ("EPA"). (*Id.* at 12.) The EPA is now overseeing Defendant's remediation efforts of the Site. (Am. Compl. at 33, 47.)

As part of its operations at the Site, Defendant used hazardous substances. (*Id.* at 7–9.) These included lead, arsenic, pentachlorophenol, aluminum, manganese, iron, pesticides, polycyclic aromatic hydrocarbons, polychlorinated biphenyls, cadmium, benzo-anthracene, benzo-pyrene, pyrene, copper, mercury, zinc, vanadium, and benzene.[3] (*Id.* at 8.) Defendant's use, storage, and disposal of these products released toxic chemicals and hazardous substances into the surrounding environment, and these substances have since migrated into surrounding areas. (*Id.* at 11–12.) Since at least 1910, Defendant has known or should have known about the danger presented by these substances, especially the dangers presented by lead.[4] (*Id.* at 10.)

Plaintiffs are a group of New Jersey residents from Gibbsboro, Voorhees, Somerdale, Atco, and Blackwood, some of whom suffer from terrible cancers and other illnesses that they attribute to Defendant's actions. (Am. Compl. at 3–7.) Plaintiffs allege that Defendant knew that the areas surrounding the Site were contaminated and extremely dangerous. (*Id.* at 9–12.) It is alleged that hazardous substances migrated into surrounding neighborhoods and residential areas, where they

---

[2] An Ohio Corporation whose principal place of business is located at 101 W. Prospect Ave., Cleveland, OH 44115. (Am. Compl. at 7.)
[3] These substances' hazardous properties have been well-documented. (*Id.* at 9-11.)
[4] Plaintiffs cite numerous acknowledgments, journal articles, internal letters, and more suggesting Defendant knew or should have known about the dangers of these substances. (*Id.* at 10-12.)

were then inhaled, ingested, or otherwise came into contact with people in the community. This contamination is an ongoing threat. (Am. Compl. at 12–23.)

Plaintiffs rely on "exposure pathways" to explain how health hazards exist in the community and why the contamination is still dangerous. (*Id.* at 18.) Exposure pathways measure how these dangerous substances meet humans, starting with the release of a contaminant in the environment and ending at its interface with the human body. (*Id.*) Potential exposure pathways in this case include: ingestion of contaminated soil and sediment; ingestion of surface and groundwater; inhalation of indoor air and vapor; and ingestion of fish, game, and plants from infected bodies of water. (*Id.* at 18–19.)

In short, Plaintiffs maintain that Defendant has acknowledged to the EPA that there is extensive contamination in the groundwater, surface water, soil, sediment, vapor samples, and more in surrounding areas. (*Id.* at 15.) Similar studies conducted by the EPA and other government agencies have reached similar conclusions. (Am. Compl. at 16.) Defendant, however, "concealed the extent of the contamination and has failed to disclose the hazards to the community." (*Id.* at 21.) Defendant has failed to adequately investigate and remediate the contamination, despite its awareness of the problem, and told residents that "no further action [was] required" at residents' properties. (*Id.*) Defendant also repeatedly diminished and underreported the level of contamination present at the Sites.[5] (*Id.* at 33–35.)

Plaintiffs' alleged damages include elevated levels of toxic chemicals and carcinogens in the environment, which have resulted in physical damage and an increased risk of disease as well

---

[5] Plaintiffs spend nearly seven pages of their Amended Complaint arguing that Defendants should not be able to assert a statute of limitations defense based on continuing violations, the discovery rule, fraudulent concealment, and estoppel. (*Id.* at 29–36.) As will become clear below, this point is functionally moot.

as the diminution in value of their properties. (*Id.* at 24–25.) They bring their claims in their own names and on behalf of a proposed class of all persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class consists of all persons who have owned or rented property, resided, or worked within the Class Area at any time since January 1, 1930. (*Id.* at 25.) The Class Area refers to the geographical area containing all homes and other structures connected to or within the fate and transport of one or more of Defendant's Contaminants. (Am. Compl. at 26.) Plaintiffs also propose three Subclasses:

   a. Subclass 1: All persons within the Class who have no known medical diagnosis of a contaminant-related bodily injury, including cancer.
   b. Subclass 2: All persons within the Class who have been diagnosed with a contaminant-related bodily injury, including cancer.
   c. Subclass 3: All persons within the Class who own or have owned property.

(*Id.* at 25–26.)

Plaintiffs bring ten counts against Defendant: Negligence (Count I); Private Nuisance (Count II); Trespass (Count III); Strict Liability (Count IV); Absolute Liability (Count V); Battery (Count VI); Fraud and Fraudulent Concealment (Count VII); Equitable Fraud (Count VIII); Medical Monitoring (Count IX); and Willful and Wanton Misconduct (Count X). (*Id.* at 36–48.)

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and (2); Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000. This is the proper forum pursuant to 28 U.S.C. § 1391 because a substantial portion of the alleged events, omissions, and damages giving rise to the claims occurred in this District.

## II. LEGAL STANDARD

### Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept

all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, The court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *Id.*

**Rule 23 Class Certification**

In order to satisfy the requirements for class certification under Rule 23, a plaintiff must satisfy the four necessary elements contained in Rule 23(a) and the requirements of one of the three subsections in Rule 23(b). *Bell v. Lockheed Martin Corp.*, No. 08-6292, 2011 WL 6256978, at *2 (D.N.J. Dec. 14, 2011) (citing *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 776 (3d Cir. 2009)).

Rule 23(a) provides that class certification is proper if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As to Subclass 1 Members' claims, Plaintiffs must establish that Defendant "acted or refused to act on grounds that apply generally to the class" so that injunctive or declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2). Additionally, as to the claims of the members of Subclass 2 and 3, Plaintiffs must show that "common" "questions of law or fact" "predominate over any" individual questions, and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**III. DISCUSSION**

*a. Federal Law Bars Any Claims Premised Upon Improper Remediation.*

Plaintiffs do not dispute that Defendant is complying with and implementing EPA-mandated remedies. After public notice and comment, the EPA issued a decision on Defendant's remediation plan. (Am. Compl. at 31.) It is undisputed that Defendant is implementing the EPA-directed remedy. (Def. MTD at 13; Def. Rep. at 3.)

The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 113(h), 42 U.S.C. § 9613(h) states, "[n]o Federal court shall have jurisdiction . . . to review any challenges to removal or remedial action selected" by the EPA. 42 U.S.C. § 9613(h); *Clinton Cnty. Comm'rs v. EPA*, 116 F.3d 1018, 1023 (3d Cir. 1997) (§ 113(h) precludes judicial review of any EPA-selected remedial action). If a lawsuit calls into question the EPA's remedial

6

response plan, it "constitutes a 'challenge' to the cleanup." *New Mexico v. General Elec. Co.*, 467 F.3d 1223 (10th Cir. 2006).

Similarly, common law suits inconsistent with EPA-ordered remedial actions are preempted. *Middlesex Cnty. Health Dep't v. Consol. Rail Corp.*, 2009 WL 62444, at *2 (D.N.J. Jan. 9, 2009) (dismissing air emissions claims); *Farina v. Nokia Inc.*, 625 F.3d 97, 125–26 (3d Cir. 2010) (dismissing a class action where the plaintiffs' claims were necessarily in conflict with federal regulation). *New Mexico* is illustrative. 467 F.3d at 1227. In that case, the defendant was performing EPA-mandated remedial activities when a plaintiff sued for damages under state common law. *Id.* Because the lawsuit "call[ed] into question the EPA's remedial response plan" it constituted a challenge to the cleanup. *Id.* at 1249. The damages the plaintiff sought, much like the potential damages Plaintiffs seek in our case, would place the defendant "in the unenviable position of being held liable for monetary damages because they are complying with an EPA-ordered remedy which [the defendant has] no power to alter without prior EPA approval." *Id.* at 1249–50.

Plaintiffs have conceded these arguments, as their Opposition does not mention or dispute them. "The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count." *Griglak v. CTX Mortg. Co., LLC*, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) (granting a motion to dismiss).

To the extent that Plaintiffs' claims (Counts I–X) rely on allegations that (1) Defendant failed to diligently and adequately investigate and remediate any hazardous substances, and (2) Defendant's public information related to the EPA-directed investigation and remediation was false or deficient, they cannot proceed. *See New Mexico*, 467 F.3d at 1244–48.

7

*b. Plaintiffs' Medical Monitoring Claims Fail to State a Plausible Claim Upon Which Relief Can Be Granted.*

Damages for medical monitoring are appropriate when a plaintiff does not exhibit a physical injury but nevertheless requires medical testing as a proximate result of a defendant's negligent conduct. *In re Paulsboro Derailment Cases*, 2015 WL 5028301, at *3 (D.N.J. Aug. 18, 2015) (citing *Ayers v. Twp. of Jackson*, 106 N.J. 557, 600 (1987)). Medical-surveillance damages may be awarded only if a plaintiff reasonably shows that medical surveillance is required because the exposure caused a distinctive increased risk of future injury. *Id.* (citing *Theer v. Philip Carey Co.*, 133 N.J. 610, 627–28 (1993)). Sweeping allegations of "serious latent disease" do not, however, properly put a defendant on notice of what the claim is or the grounds on which it rests. *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 2013 WL 5655480, at *3 (E.D. Pa. Oct. 17, 2013) (citing *Twombly*, 550 U.S. at 545).

Plaintiffs cite numerous potential health hazards presented by lead and arsenic. (Pl. Opp. at 14; Am. Compl. at 19–20.) They also allege that the contaminants at the site have migrated via wind dispersion, surface and groundwater migration, and other environmental means into and around Plaintiffs' communities and homes, posing a public health hazard to all. (Pl. Opp. at 16.) But they do not identify specific substances to which Plaintiffs were *actually* exposed, at what levels Plaintiffs were actually exposed, which diseases Plaintiffs are at an increased risk of developing, what the potential risks are, what types of medical monitoring program are required,[6] how any proposed programs would operate, how those programs would detect the diseases that

---

[6]Though Plaintiffs do request "baseline exams, diagnostic exams, and pharmaceutical interventions." (Am. Compl. at 46.)

Plaintiffs do not actually specifically allege, or how any medical monitoring programs would actually protect them.[7]

Plaintiffs try to distinguish this case from both *Slemmer*, 2013 WL 5655480, and *Rowe v. E.I. du Pont de Nemours & Co.*, 2008 WL 5412912 (D.N.J. Dec. 23, 2008). This Court finds these attempted distinctions unconvincing. In *Slemmer*, the plaintiffs vaguely alleged that they were at an increased risk of developing lung damage. In this case, Plaintiffs vaguely allege increased health risks from potential lead, arsenic, benzene, and benzo(a)pyrene exposures. (Pl. Opp. at 16.) Similarly, the issues from *Rowe* are present here as well. As discussed in the preceding paragraph, Plaintiffs have simply not properly alleged that on a *class-wide basis* they have suffered an increased risk of disease.

   c.  *Plaintiffs Fail Rule 23(b) Predominance Requirements.*

Despite Plaintiffs' citations from other circuits stating otherwise, within the Third Circuit Rule 12 can be used to dismiss class allegations that fail to satisfy Fed. R. Civ. P. 12(b)(6). (*See* Pl. Opp.); *Nicholas v. CMRE Fin. Servs., Inc.*, 2009 WL 1652275, at *4 (D.N.J. June 11, 2009) ("After *Twombly*, courts in [the Third Circuit] have found that class allegations must also comply with Rule 8(a) in order to proceed to class discovery"); *Slemmer*, 2013 WL 5655480, at *3–4 (E.D. Pa. Oct. 17, 2013) (dismissing classes at the Fed. R. Civ. P. 12(b)(6) stage).

To meet the Rule 23 commonality requirement, class members' claims must "depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *King Drug Company of Florence, Inc. v. Cephalon, Inc.*, 309 F.R.D.

---

[7]Outside of "mak[ing] possible the early detection of the diseases" and "prevent[ing] or mitigate[ing] the injuries." (*Id.*)

195, 207 (E.D. Pa. 2015) (quoting *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. *Wal-Mart*, 131 S. Ct. at 2551 ("Dissimilarities within the proposed class are what have the potential to impede the generation of common answers"). The requirement may be satisfied by a single common issue. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Plaintiffs must also allege sufficient Rule 23(b) predominance, though, which is more demanding than commonality and requires more than a common claim. *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997); *Newton v. Merrill Lynch, Pierce, Fenner *Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001).

Significant individual issues pervade this entire action. Although Plaintiffs argue that individual damages calculations do not prevent Rule 23(b)(3) certification, (Pl. Opp. at 9–10, 13, 17), there is a big difference between a damages *calculation* versus establishing *liability*. *See In re Paulsboro Derailment Cases*, 2014 WL 4162790, at *12 (D.N.J. Aug. 20, 2014). Where proof is essential—as it is here—the need for individualized proof can defeat predominance. *Id.* (quoting *Newton*, 259 F.3d at 188).

In a case like this one, proof of both causation and damages are essential to liability. Put simply, individual fact finding is *essential* to determine whether one of these hazardous substances impacted someone. Proposed class members live and work miles apart. Their potential exposures, if any, are likely drastically different. Conducting such causative inquiries on a class-wide basis would be problematic and wildly inaccurate—individualized proceedings are necessary. For example, proposed class members who live and own property in Gibbsboro but have never been exposed to hazardous substances as a result of Defendant's actions would not be class members. But the only way to determine whether they have been exposed is an individual inquiry. We cannot

do this for thousands of people and call it a class-action. Similarly, Plaintiffs cannot demonstrate a class-wide method of proving damages. *Id.* (citing *Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 202-03 (D.N.J. 2013) (noting that the Supreme Court's recent opinion in [*Comcast*] is clear that a plaintiff seeking class certification must present evidence of a reliable methodology for calculating damages on a class-wide basis"). Plaintiffs have not even attempted to do so in this case. Individual issues of exposure, causation, and damages preclude class certification.

   *d. The Definition Of Class Area Is Unascertainable.*

Plaintiffs define the Class Area as the "geographical area containing all homes and other structures connected to or within the fate and transport of one or more of Defendant's Contaminants." (Am. Compl. at 26.)

This amounts to a class that is wholly unascertainable without individualized investigation and creates an impermissible "fail-safe class where the question of whether a person qualifies as a member depends on whether the person has a valid claim." *Martinez v. TD Bank USA, N.A.*, 2017 WL 2829601, at *11 (D.N.J. June 30, 2017) (granting a motion to strike class allegations because the class was not properly ascertainable). Plaintiffs themselves do not allege that any of their individual properties contain or contained hazardous substances. (*See* Am. Compl.) The class itself is rendered "impossible to identify without extensive and invidualized fact-finding or mini-trials." There also is no "reliable, administratively feasible alternative" way to determine who is properly a member of the proposed class. *Carrera v. Bayer Corp.*, 727 F.3d 300, 303–04 (3d Cir. 2013) (citing *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). The only way to make such a determination would be individual fact-finding or trials that measure the level of contamination that someone was exposed to or that someone's property contained.[8]

---

[8] Plaintiffs also leave their preferred term, "fate and transport," undefined. (Am. Compl. at 26.)

Plaintiffs are essentially asking this Court to greenlight a Class Area defined as anywhere there is contamination. This Court declines to do so.

**IV. CONCLUSION**

For the reasons discussed above, Plaintiffs' Amended Complaint is hereby **DISMISSED**. An Order follows.


Dated: _8/21/2018_____                                         /s Robert B. Kugler
                                                               ROBERT B. KUGLER
                                                               United States District Judge